IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**LISA ANN HALE,**

                    Plaintiff,                                        Civil No. 10-951-PK

            v.                                                        **FINDINGS AND**
                                                                      **RECOMMENDATION**

**MICHAEL J. ASTRUE,**

                    Defendant.

_____

PAPAK, Magistrate Judge:

        Plaintiff Lisa Hale ("Hale") seeks judicial review of the Social Security Commissioner's final

decision denying her application for Supplemental Security Income. This court has jurisdiction

under 42 U.S.C. § 405(g). For the reasons that follow, the Commissioner's decision should be

reversed and remanded for further proceedings.

1 - FINDINGS AND RECOMMENDATION

## BACKGROUND

Born in 1981 (Tr. 115)[1], Hale completed high school with special education classes. Tr. 131. She alleges disability since June 1, 1994 (Tr. 115), due to a learning disability, knee problems, back problems, and an unspecified "left foot" impairment. Tr. 127. The Commissioner denied Hale's application initially and upon reconsideration (Tr. 72-76), and an Administrative Law Judge ("ALJ") held hearings on August 5, 2008, and September 2, 2008. Tr. 11-57. The ALJ found Hale not disabled on September 24, 2008. Tr. 63-71. The Appeals Council accepted additional evidence into the record, but denied review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. Tr. 1-5. This appeal followed.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month duration requirement. 20 C.F.R. § 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines if the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). If the ALJ determines the impairment

---

[1]Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer January 7, 2011 (Docket #12).

meets or equals a listed impairment, the claimant is disabled.  20 C.F.R. § 416.920(d).

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC").  The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments.  20 C.F.R. § 416.920(e); Social Security Ruling ("SSR") 96-8p.  The ALJ uses this information to determine if the claimant can perform her past relevant work at step four.  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant can perform such work, she is not disabled.  If the claimant cannot perform such work, the analysis continues.

If proceedings reach step five, the Commissioner must determine if the claimant is capable of performing work existing in the national economy.  20 C.F.R. § 416.920(a)(4)(v); *Yuckert*, 482 U.S. at 141-2; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098.  If the process reaches the fifth step, the burden of production shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100.  If the Commissioner meets this burden the claimant is not disabled.  20 C.F.R. §§ 416.966; 416.920(g).

## THE ALJ'S FINDINGS

The ALJ found Hale's borderline intellectual functioning and affective disorder "severe" at step two in the sequential proceedings.  Tr. 65.  The ALJ concluded that these impairments did not meet a listing at step three, and found that Hale retained the RFC to "perform a full range of work at all exertional levels.  Further, the claimant can perform simple, routine, repetitive tasks with little

3 - FINDINGS AND RECOMMENDATION

public contact." Tr. 67. At step four, the ALJ found that Hale could not perform her past relevant work (Tr. 69), but found that she could perform work in the national economy at step five. Tr. 70. The ALJ therefore found Hale not disabled. Tr. 71.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin,* 554 F.3d 1219, 1222 (9th Cir. 2009), *quoting Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.*, *citing Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d at 1193.

## DISCUSSION

Hale challenges (1) the Appeals Council's review of the matter; (2) the ALJ's evaluation of her credibility; (3) the ALJ's evaluation of the lay witness testimony; and (4) the ALJ's evaluation of the medical evidence. She consequently asserts that the ALJ should have found her disabled at

steps three and five in the sequential proceedings.

I.    **Evidence Before the Appeals Council**

The Appeals Council accepted additional evidence into the record (Tr. 4), and reviewed this evidence in denying Hale's request for review.  Tr. 1-3.  This evidence specifically comprised a report regarding wrist pain by Robert Earl,[2] a November 5, 2009, letter indicating that Vocational Rehabilitation services was closing Hale's file, and a November 3, 2006, Vocational Rehabilitation caseworker note.  Tr. 318-27.  Hale now asserts that the Appeals Council "improperly rejected medical and vocational evidence." Pl.'s Opening Br. 14.

A.    **Jurisdiction to Review Appeals Council Decision**

This court reviews the Commissioner's final decision.  42 U.S.C. § 405(g).  When the Appeals Council denies a request for review, "it is a non-final agency action not subject to judicial review because the ALJ's decision becomes the final decision of the Commissioner." *Taylor v. Comm'r, Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011), *citing Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008).  Consequently, the reviewing court has no jurisdiction to review an Appeals Council decision denying a claimant's request for review; it may "neither affirm nor reverse the Appeals Council decision." *Taylor*, 659 F.3d at 1231.  This court therefore cannot engage in analysis regarding the reasoning of the Appeals Council or its conclusions, and will not address Hale's submissions regarding such.

B.    **Evidence Submitted to the Appeals Council**

The record presently before this court clearly shows that the Appeals Council accepted the

---

[2]The chart note does not indicate Robert Earl's credentials.  Tr. 310-15.

evidence in question: the Order issued by the Appeals Council stated that it "received additional evidence which it is making part of the record," and listed Robert Earl's opinion and the Vocational Rehabilitation records, which include a report by Vocational Rehabilitation counselor Susan Mahony. Tr. 4. Once the Appeals Council accepts evidence into the record, this court reviews that evidence in reviewing the ALJ's decision. *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993).

Hale asserts that the evidence before the Appeals Council establishes disability, but does not explain this conclusion. The first exhibit accepted by the Appeals Council, Robert Earl's June 15, 2009, chart note, describes Hale's reports of right wrist pain and his assessment of osteoarthritis of the radioulnar joint. Tr. 310-314. Hale now makes no identifiable argument pertaining to this evidence, stating only that it establishes disability when given "great weight." She points to no additional evidence, such as vocational expert testimony, that would support a finding of disability relating to her wrist. Because Hale does not explain the manner in which her alleged wrist impairment relates to a finding of disability, her argument should be rejected.

The second exhibit accepted by the Appeals Council documents a November 5, 2009, decision by Vocational Rehabilitation services to close Hale's file, and a November 3, 2006, report by vocational rehabilitation counselor Susan Mahony. Tr. 321-27. Hale fails to address this evidence in her argument pertaining to the Appeals Council decision. Pl.'s Opening Br. 16. However, this court reviews evidence accepted by the Appeals Council, *Ramirez*, 8 F.3d at 1452, and therefore considers Mahony's letter and accompanying documentation below.

## II.    Hale's Credibility

Hale asserts that the ALJ erroneously rejected her symptom testimony. Pl.'s Opening Br. 16.

6 - FINDINGS AND RECOMMENDATION

## A.     Standards: Credibility

The ALJ must consider all symptoms and pain which "can be reasonably accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. *Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir. 2007), *citing Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995), *citing Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) *(en banc)*. The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. *Id.* The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2005).

## B.     Analysis

Hale's credibility challenge asserts that, contrary to the ALJ's finding, simple work is inconsistent with her daily functioning and activities. Pl.'s Opening Br., 16-17. The ALJ may consider a claimant's activities of daily living in his credibility analysis, *Smolen*, 80 F.3d at 1284, and may determine that a claimant's activities are inconsistent with an allegation of disability.

*Batson*, 359 F.3d at 1196.

The ALJ considered Hale's report, and her mother's, in drafting Hale's RFC. The ALJ noted their reports that Hale performs self care, spends time with friends daily, goes to the library and checks her email, reads, visits her family several times per month, helps with laundry and dishes, cares for animals, cleans her room, cooks, grocery shops, takes public transportation, goes to the mall, and performs paid babysitting work. Tr. 68. The record clearly shows that both Hale and her mother repeatedly reported that Hale engaged in such activities. Tr. 18, 29, 33, 39-41, 143-48, 248-52.

Hale now asserts that, for various reasons, her activities are less demanding than the ALJ found. Pl.'s Opening Br. 17. When more than one plausible interpretations of a claimant's activities of daily living arise, this court must defer to an ALJ's interpretation of those activities. *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001). However, a disability claimant need not "vegetate in a dark room," *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987), and sporadic or minimal completion of daily activities may be consistent with an allegation of disability. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see also Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007).

The ALJ's finding that Hale's activities contradicted her allegation of total disability failed to consider the nature of Hale's activities. Hale reported grooming, dressing, cleaning her room, and limited babysitting. These activities are consistent with Hale's borderline intellectual functioning disorder. While Hale also reported reading (Tr. 19, 40), she concurrently stated that she cannot remember what she reads. Tr. 19. This activity also does not indicate greater functioning than Hale alleges. In such circumstances, the ALJ may not rely upon a claimant's activities to reject her symptom testimony. *Reddick*, 157 F.3d at 722. The ALJ therefore erroneously relied upon Hale's

reports in rejecting her symptom testimony.

The Commissioner additionally contends that the ALJ's credibility findings should be supported because the ALJ found Hale's subjective complaints consistent with an RFC allowing performance of "simple" work. Def.'s Br., 20. The ALJ may not reject a claimant's credibility based upon the conclusions reached in her RFC assessment. Such analysis reverses the manner in which an ALJ considers a claimant's credibility. The ALJ must consider a claimant's symptom testimony in construing the claimant's RFC assessment. 20 C.F.R. § 416.945(a)(3); SSR 96-8p at *7 (available at 1996 WL 374184). Dismissing a claimant's credibility because it is inconsistent with a conclusion that must itself address the claimant's credibility is improper circular reasoning. *Carlson v. Astrue*, 682 F. Supp.2d 1156, 1167 (D. Or. 2010); see also *Lowe v. Astrue*, No. 10-0904, slip op. at 3 (D. Or. Sep. 15, 2011). The Commissioner's suggestion that the ALJ may rely upon his RFC conclusion in rejecting a claimant's symptom testimony is erroneous.

Finally, the Commissioner asserts that the medical evidence supports the ALJ's rejection of Hale's symptom testimony. Def.'s Br. 20. The Ninth Circuit has long instructed that, once a claimant establishes an impairment, an ALJ may not reject that a claimant's symptom testimony solely because it is unsupported by the medical record. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2005); *see also Bunnell*, 947 F.2d at 345-46 (*en banc*). Because the ALJ offered no other sustainable reasons to reject Hale's testimony, the court cannot affirm the ALJ's credibility determination based upon the medical evidence alone.

### C.    Credibility Conclusion

In summary, the ALJ's analysis of Hale's credibility  is not based upon the proper legal standards. The ramifications of this error are discussed below.

### III.    Lay Witness Testimony

Hale also asserts that the ALJ improperly evaluated testimony submitted by her mother, Debra Hale. Pl.'s Opening Br. 19.

#### A.    Standards: Lay Testimony

The ALJ has a duty to consider lay witness testimony. 20 C.F.R. §§ 416.913(d), 416.945(a)(3); *Bruce v. Astrue*, 557F.3d 1113, 1115 (9th Cir. 2008). Friends and family members in a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment and must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

#### B.    Analysis

Debra Hale submitted a third-party questionnaire to the record on August 22, 2005. Tr. 143-49. She stated that Plaintiff Hale goes to her sister's apartment each morning to prepare her nephew for school, and then goes to the library or visits friends during the day. Tr. 143. Debra Hale also reported that Plaintiff cares for her cat, cannot run or walk long distances, and has no difficulties with her personal care (Tr. 144); she performs household chores, including cleaning, laundry, dishes, and cleaning her room, and does not need help or encouragement in doing these tasks. Tr. 145. She also reported that Plaintiff shops for clothes and groceries, but is unable to balance a checkbook. Tr. 146.

Debra Hale endorsed restrictions on Plaintiff's ability to lift, squat, bend, stand, walk, sit, kneel, climb stairs, complete tasks, and get along with others, explaining that this was "due to her

back, knee [and] ankle problems. The most she can lift is about 30 pounds." Tr. 147. Debra Hale reported that Plaintiff does not follow spoken instructions "very well," and her hobbies include visiting, reading, and watching television. Tr. 148. Debra Hale stated that her daughter is a "fair reader," *id.*, and her social activities include seeing friends, playing games, going to the library, and going to the mall two or three times per week. *Id.* Finally, Debra Hale reported that Plaintiff cries in response to stress or changes in routine, and must sleep with the light on. Tr. 149.

The ALJ cited Debra Hale's testimony, stated that he considered it, found it consistent with the record, and gave it "some weight." Tr. 69. Hale asserts that Debra Hale's testimony "establishes that, during relevant times, Plaintiff did not have the ability to perform regular, full-time work on a continuing basis." Pl.'s Opening Br. 19. Hale provides no explanation for this assertion, and points to no evidence of record establishing such a limitation in conjunction with Debra Hale's testimony. Further, Debra Hale did not identify any non-exertional limitations inconsistent with the ALJ's finding. Though Debra Hale stated that she did not think Hale could lift more than thirty pounds, the ALJ did not find that Hale had any physical impairments causing work-related limitations, and Hale does not now assert that the ALJ erred in this matter. She therefore cannot now assert that she has a functional limitation stemming from an unidentified physical impairment.

For all of these reasons, Hale fails to establish reversible error in the ALJ's analysis of Debra Hale's testimony.

## IV.    Medical Source Statements

Hale challenges the ALJ's findings regarding examining psychologist Stephen Barry, Ph.D., and Vocational Rehabilitation job coach Susan Mahony. Pl.'s Opening Br. 11-14.

### A.    Standards

Disability opinions are reserved for the Commissioner. 20 C.F.R. § 416.927(e)(1). When making that determination, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ must also generally give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a contradicted opinion. *Id.* at 830. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

### B.    Stephen Barry, Ph.D.

Dr. Barry evaluated Hale on September 2, 2005. Tr. 276-81. He conducted a clinical history, interview, and exam, as well as mental status testing, and assessed dysthymic disorder and borderline intellectual functioning. Tr. 281. He explained that, "from a strictly objective viewpoint, she doesn't test . . . as mildly retarded. Her results are more akin to Borderline Intellectual Functioning." Tr. 280. He also stated that Hale has an "Adaptive Behavior composite . . . on par with a child 7 yrs and 7 mos." *Id.* Dr. Barry did not explain the meaning of this assessment, and also indicated that Hale's "maladaptive behavior" is "intermediate." *Id.* Finally, Dr. Barry discussed Hale's work history in retail and in babysitting, and concluded: "Given the information I obtained, I think she is not employable in a competitive work environment." Tr. 281.

The ALJ twice discussed Dr. Barry's opinion. First, he noted that Dr. Barry assessed a Verbal IQ score of 70, a Performance IQ score of 78, a full scale IQ score of 72, and concluded that

this supported a Borderline Intellectual Functioning diagnosis. Tr. 67. The ALJ accepted these findings. Tr. 67. The ALJ also discussed Dr. Barry's opinion regarding Hale's alleged inability to work, and accorded it "little weight." Tr. 69. Here the ALJ reasoned that Dr. Barry's conclusion on the matter was inconsistent with Hale's "daily functioning and other reported activities, as well as, her performance on examination." Tr. 69.

Hale first asserts that the ALJ's findings regarding Dr. Barry mischaracterized her activities of daily living. Pl.'s Opening Br. 12. The ALJ's interpretation of Hale's activities was improper for the reasons articulated above. *Supra*, 8. The ALJ's rejection of Dr. Barry's opinion, to the extent it is predicated these activities, therefore should not be sustained.

Hale also asserts that the ALJ "has not provided any valid reasons why Dr. Barry's report of Plaintiff's specific deficits should be given 'little weight.'" Pl.'s Opening Br. 12. The ALJ did not reject Dr. Barry's conclusion regarding "specific deficits;" the ALJ rejected Dr. Barry's conclusion that he did not think Hale could maintain competitive employment.

Hale continues, without citation: "Dr. Barry explained that Plaintiff has deficits in attention and concentration, socialization, communication, decision making, and age-appropriate adaptive behavior." *Id.* This court finds no statement in Dr. Barry's opinion that Hale has specific work-related deficits in attention, concentration, socialization, communication, or decision making. Further, Dr. Barry did not explain the meaning of his "adaptive behavior" evaluation, or articulate associated work-related limitations. The ALJ may reject opinions that are brief, conclusory, or inadequately explained. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2004), and the ALJ therefore properly rejected Dr. Barry's opinion as it pertains to these findings.

### C.    Susan Mahony, Vocational Rehabilitation Job Coach

Both parties agree that Susan Mahony should be evaluated as an "other" medical source under the Commissioner's regulations. Pl.'s Opening Br. 13, Def.'s Br. 10. The regulations instruct that social workers, vocational rehabilitation counselors, and similar professionals are evaluated as "other" evidentiary sources. 20 C.F.R. § 416.913(d)(1). Their opinions are relevant to the extent they describe Hale's symptoms and functionality. *Id.* The Commissioner issued an Administrative Ruling addressing evaluations of such "other" sources, and instructed ALJs to consider factors such as (1) how long the source has known the claimant and how frequently he sees the claimant; (2) the consistency of the "other" source opinion with other evidence; (3) the degree to which the source presents relevant evidence to support her opinion; (4) how well the source explains his opinion; (5) whether the source has a specialty or area of expertise related to the individual's impairment; and (6) any other factors that tend to support the source's opinion. SSR 06-3p at *4 (available at 2006 WL 2329939). Opinions of "other" sources may therefore reflect the source's judgment about issues addressed in the claimant's medical record from "acceptable" medical sources, including, "symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." *Id.* at *5.

Mahony evaluated Hale for Vocational Rehabilitation services on February 3, 2007. Tr. 234-36. Her evaluation is titled "Monthly Report." Tr. 234. She described observations regarding Hale's "Quality of Participation/Work Readiness," and provided a statement of Hale's vocational rehabilitation case status and progress towards plan goals. Tr. 234-35. Mahony stated that Hale had no attendance issues with their meetings, but had some problems with appearance and grooming. Tr.

234.  Mahony described Hale's affect as "flat," and wrote that this "may be mistaken for apathy."

*Id.*  She also stated that Hale "demonstrates the cognitive skills to perform very basic entry level

tasks . . . but was not able to apply critical judgment or insight into the work expectations/culture."

*Id.*  Mahony explained:

> For instance, Lisa made disgusted observations about surgical
> procedures in the [veterinary] clinic, that if overheard by clinic staff
> would have been inappropriate.  She also placed her personal
> circumstances above her work commitments (i.e. missing the bus, or
> being late because her dad wasn't ready to drive her when she needed
> to be at the work site.  She also scheduled an appointment on a day
> when she was scheduled to work and did not tell me until the day
> before).  I believe Lisa's ability to perform basic tasks can contribute
> to a misleading picture of her capabilities and overall
> unemployability.  She will certainly benefit from developing an
> understanding of workplace culture, employer expectations, self-
> presentation on the job, prioritizing commitments, and better
> boundaries on the job.

Tr. 234-35.

The Appeals Council also accepted an additional report authored by Mahony on November

3, 2006.  Tr. 324-27.  That report contained observations identical to her January 2007 report under

the heading "Quality of Participation/Work Readiness" heading.  Tr. 324-25.  Mahony also described

her efforts to secure a workplace assignment for Hale.  Tr. 324-25.

The ALJ discussed Mahony's 2007 report ("Ex. 15E"), noting Mahony's comments

addressing Hale's critical judgment and her choices regarding personal preferences and work

commitments.  Tr. 69.  The ALJ also noted Mahony's report that Hale did not have attendance

issues, and that she could perform basic tasks.  *Id.*  The ALJ found Mahony's additional restrictions

contradicted by other evidence in the record, including reports of Hale and her mother describing

Hale's daily activities and ability to care for her sister's children without assistance. Tr. 69. The ALJ's reasoning is based upon substantial evidence and should be affirmed.

Mahony's November 3, 2006, report submitted to the Appeals Council contained language identical to Mahony's February 3, 2007, comments regarding Hale's hygiene and affect (Tr. 234, 324), and offered no new information regarding Hale's workplace functioning. The report instead describes efforts Mahony and her colleagues made to secure Hale job interviews and provide Hale with encouragement regarding lifestyle choices and work expectations. 235. This evidence therefore does not justify disturbing the ALJ's findings regarding Mahony's opinion.

## V.    The ALJ's Step Three Findings

Hale asserts that the ALJ should have found her disabled under the Commissioner's listings at step three in the sequential proceedings. Pl.'s Opening Br. 8. She specifically argues that she meets Listing 12.05C, which addresses mental retardation. *Id.*

Notably, Hale did not assert that she met Listing 12.05 at her hearing, instead maintaining that she met Listing 12.02 (Tr. 55), which pertains to "organic mental disorders." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.02. The claimant bears the burden of establishing disability at step three, and an ALJ is not required to compare a claimant's impairment in an equivalency determination at step three "unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). However, Hale presented evidence regarding her IQ throughout her hearing and the record before this court, and the court therefore considers her arguments pertaining to her IQ at step three.

///

16 - FINDINGS AND RECOMMENDATION

### A.    Step Three Standards

At step three, the ALJ determines whether the claimant's severe impairments meet or equal a "listed" impairment in the regulations.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairments are determined to equal a listed impairment, the claimant is disabled.  Step three findings are generally based upon "medical severity" without reference to a claimant's testimony.  *Id.*  However, the regulations pertaining to mental health disorders allow a determination in based in part upon a claimant's reported limitations.  20 C.F.R. Subpt. P. App. 1, § 12.00D(1)(b).  As noted, the claimant bears the burden of establishing disability at step three.  *Tackett*, 180 F.3d at 1098.

### B.    Analysis

"12.05C" is not a stand-alone listing under the Commissioner's regulations; it is one of three prongs addressing mental retardation.  20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05.  Listing 12.05 first requires that a claimant establish that she has "significantly subaverage general intellectual functioning with deficits in adaptive functioning during the developmental period; i.e. the evidence demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Pt. 404, Supt. P, App. 1 § 12.05.  A claimant must also meet associated "A," "B," "C," or "D" criteria.  To meet the "C" criteria Hale cites, a claimant must establish "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function."  *Id.* at § 12.05C.

To meet listing § 12.05, Hale must first establish that she meets the threshold requirement of "significantly subaverage general intellectual functioning" before age 22.  Hale argues that:

> Plaintiff's records show she received child's SSI benefits through
> March, 2000 (Tr. 208), and that she was eligible for services through

> Multnomah County Developmental Disabilities Services Division as a person with mental retardation. The records indicate that Plaintiff had an IQ pattern established before her 18th birthday, an IQ between 66 and 75, and an assessment indicating significant adaptive impairment. (Tr. 216.) Plaintiff had a full scale IQ score of 66 in 1994, 71 in 1999, and 75 in 2000. Pl.'s Opening Br. 9.

The record before this court does not indicate why Hale received SSI as a child. Hale's indicated citation points to a Multnomah County Developmental Disabilities Services note stating that "Lisa had been receiving SSI until 3/2000. The worker at the [Social Security] office thought it was due to her family income or medical cessation that her benefits had been terminated." Tr. 208. This information does not establish that Hale had the requisite IQ before age 22.

Hale's second indicated citation points to Multnomah County Developmental Disabilities Services "eligibility statement" completed by a team of social workers on September 16, 2002. Tr. 216-17. The Commissioner's regulations instruct that social workers are evaluated as "other"medical sources. 20 C.F.R. § 416.913(d)(1). Their opinions are relevant to the extent they describe Hale's symptoms and functionality. *Id.*

As Hale acknowledges, the September 2002 form presents a "checklist" which shows an endorsements of "IQ pattern established before the 18th birthday" and "IQ 66-75 with assessment indicating significant adaptive impairment." *Id.* The form subsequently lists Hales IQ scores, noting that it was 66 in 1994, 71 in 1999, and 75 in 2000. Tr. 217. An annotation next to entries for 1990 and 1993 reads, "Scores underestimate true cognitive potential" and "borderline range of intellectual functioning." *Id.*

"Borderline intellectual functioning" describes an IQ ranging between 71 and 84. American Psychiatric Ass'n, *Diagnostic and Statistical Manual*, Fourth Ed., Text Rev. (2000) 740. These IQ

scores are outside the range prescribed by Listing 12.05. To meet Listing § 12.05, including §

12.05C, Hale must show an IQ score below 70, 20 C.F.R. Pt. 404, Supt. P, App. 1 § 12.05, which

is lower than the IQ associated with borderline intellectual functioning. Hale must also satisfy the

Commissioner's durational requirement that an impairment last a period of twelve months or longer.

20 C.F.R. § 416.909.

The Multnomah County September 2002 eligibility statement shows that Hale had an IQ

below 70 on one occasion only, in 1994, and in fact states that her IQ was above 70 in 1990, 1993,

1999, and 2000. Therefore, regardless of the status of these assessments promulgated by social

workers functioning as "other" medical sources under the Commissioner's regulations, this evidence

does not establish that Hale had the requisite IQ under 70 for twelve months or longer necessary to

meet Listing § 12.05C.

Hale also submits that a 1994 assessment showed that her "age equivalent adaptive behavior

component was 6.2 years," and another assessment in 2000 "indicated" that her "adaptive

functioning age equivalent was 7 years." Pl.'s Opening Br. 9 (citing Tr. 217). Neither Hale nor her

indicated citations explain the significance of such "adaptive" functioning. Because Hale does not

possesses the requisite IQ to satisfy Listing § 12.05, this submission is irrelevant.

In summary, Hale fails to establish that she meets Listing § 12.05C. The ALJ's findings at

step three should be affirmed.

## VI.    The ALJ's Step Five Findings

Finally, Hale asserts that the ALJ submitted incomplete hypothetical questions to the

vocational expert at step five in the sequential proceedings.

At step five in the sequential proceedings, the ALJ determines if the claimant can perform work in the national economy. 20 C.F.R. § 416.(a)(4)(v). Here the ALJ may take administrative notice of the occupational data contained in the *Dictionary of Occupational Titles*, or draw upon a vocational expert's testimony to show that a claimant can perform work in the national economy. 20 C.F.R. § 416.966(d-e). The ALJ's questions to the vocational expert must include all properly supported limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). Because the ALJ did not properly assess Hale's testimony, this court cannot determine that the ALJ's questions to the vocational expert were complete. The ALJ's step five findings therefore cannot be sustained.

## V.    Remand

The ALJ erroneously evaluated Hale's testimony. The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (*cert. denied*, 531 US 1038 (2000)). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir 2004)). The court may not award benefits punitively, and must conduct a credit-as-true analysis to determine if a claimant is disabled under the Act. *Id.* at 1138.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of

disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.* The "crediting as true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (citing *Bunnell*, 947 F2d at 348). The reviewing court declines to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

The ALJ analysis of Hale's testimony is erroneous for the reasons established above, and this error taints the ALJ's evaluation of Dr. Barry's opinion regarding Hale's daily activities. The ALJ's subsequent RFC assessment and hypothetical questions to the vocational expert at step five in the sequential disability analysis are therefore not based upon the proper legal standards.

However, it is not clear from the record that crediting the omitted evidence establishes that Hale is disabled at step five in the sequential proceedings. Hale stated that she cannot remember what she reads, make change in a retail setting (Tr. 19), or work "all by myself." Tr. 20. She also stated that she required repeated instructions in a work setting (Tr. 21, 28), has difficulty communicating (Tr. 27), and remembering her schedule. Tr. 28. Hale's counsel did not ask the vocational expert to consider the effects of these omitted limitations. Tr. 54. Given the opportunity, Hale's counsel instead described his theory that Hale met a listed disorder at step three. *Id.*

Further, Hale presently makes no argument specifically pertaining to the improperly omitted evidence discussed above and any subsequent finding that she cannot perform work in the national economy. Her assertion of disability at step five in the sequential proceeding points to no specific work-related restrictions articulated by either lay witness and addressed by the vocational expert.

21 - FINDINGS AND RECOMMENDATION

Pl.'s Opening Br. 20; Pl.'s Reply Br. 10.

Thus, outstanding issues must be resolved before a determination that award of benefits is appropriate. In such instances, the court declines to credit the improperly omitted testimony. *Luna*, 623 F.3d at 1035. The matter must be remanded for further proceedings to address Hale's testimony, and Dr. Barry's opinion as it pertains to Hale's activities of daily living. If necessary, the ALJ must then revise his RFC determination. Finally, the ALJ must make adequate step four and five findings incorporating any revised findings.

## CONCLUSION

For the forgoing reasons, the court should REVERSE the Commissioner's final decision and REMAND this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the Findings and Recommendation.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

IT IS SO ORDERED.

Dated this 30th day of November, 2011.

Paul Papak
United States Magistrate Judge

22 - FINDINGS AND RECOMMENDATION